# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Aurelio Sanchez,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　Respondents. | No. CV-15-01257-PHX-JJT (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JOHN J. TUCHI, UNITED STATES DISTRICT JUDGE:

Petitioner Juan Aurelio Sanchez has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

## I.   SUMMARY OF CONCLUSION

Petitioner's conviction became final on March 5, 2013, which was 90 days after the Arizona Supreme Court denied review of his direct appeal. Petitioner filed a PCR petition on September 3, 2013, which statutorily tolled the limitations period. Contrary to Respondents' position, the Court finds the Petition timely and that the time between March 5 and September 3 was tolled. Although Petitioner's counsel never filed a Notice of Post-Conviction Relief, the trial court granted two extensions to file a PCR petition. Because the record reflects that the trial court would have found the PCR petition timely, the time prior to its filing is statutorily excluded here. Grounds One and Two are not cognizable, and Ground One nonetheless fails on the merits. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

## II. BACKGROUND

### a. Facts of the Crimes

The Arizona Court of Appeals found the following facts as true:[1]

Shortly after 4 a.m. on July 6, 2009, police received a 9–1–1 call from the victim's cell phone, but someone hung up before the caller said anything. When the 9–1–1 dispatcher called back, she heard a television in the background before someone again hung up the phone. When the dispatcher called back again, at 4:15 a.m., a woman could be heard repeatedly screaming "Johnny"[2] in the background before someone hung up the phone.

Sanchez called the victim's sister at 4:19 a.m., but he hung up before he said anything. When the 9–1–1 dispatcher called the victim's phone a third time, at 4:20 a.m., a male voice said, "Nothing is wrong." When the dispatcher informed him that something was wrong and police were on the way, and asked to speak to the woman, he hung up.

Two minutes later, Sanchez called the victim's niece, asking her to come and get his girlfriend's two-year-old boy, and "[t]ake care of him for the rest of his life," explaining that he had "fucked up" with his girlfriend, and he was "sorry for what he had done." The family rushed to the apartment, where they found Sanchez's girlfriend dead, lying face up on the floor in a pool of blood, with Sanchez lying face down on top of her. Sanchez grabbed a knife and cut his neck before the victim's brother-in-law took the knife away from him.

When police arrived at the scene about one-half hour later, Sanchez repeatedly swore, yelled, and kicked at them, said he wanted to die, and informed the officers, "I told her not to do it," and "I tried not to do it." In an interview the following day, Sanchez denied killing his girlfriend. He told the detective, however, that he had told the 9–1–1 dispatcher that he had killed her. Sanchez testified at trial that he and his girlfriend were fighting, and she cut him with a knife after he called 9–1–1 twice, hanging up both times without saying anything. He testified that after the 9–1–1 operator called back and told him that police were on the way, she slit her throat while standing in front of him and her two-year-old boy, and he grabbed her and put her on the floor, where she died.

The medical examiner ruled the death a homicide, caused by a deep cut to the victim's neck, which sliced through the neck muscle, into the thyroid cartilage, through the jugular vein, and through one-third of the left carotid artery. He testified that when the wound was inflicted, "most likely, the tip of the knife was pointing to her left side. The handle was on the right side." The victim was left-handed. The medical examiner testified that the wound was not consistent with suicide because of the absence of hesitation

---

[1] The Arizona Court of Appeals' recitation of the facts is presumed correct. *See* 28 U.S.C. § 2254(d)(2), (e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in state appellate court's opinion should not be afforded the presumption of correctness).

[2] Petitioner was known as "Johnny." (Doc. 8-2, Ex. A, at 44.)

marks. He testified that the victim could have continued breathing thirty seconds to two minutes after her throat was slashed, and the lack of damage to her central nervous system would have permitted her to move after she was injured.

An expert in blood spatter analysis concluded that the victim's throat was slashed when she was sitting on the love seat, after which she stood up and tried to leave the apartment by the front door, but she came back into the living room, where she fell. He indicated that the blood spatter showed that she was prevented from leaving by Sanchez, who slammed the door closed after she had partially opened it. The victim's sister found the front door to the apartment locked, but a set of keys had been left in the deadbolt lock.

*State v. Sanchez*, No. 1 CA-CR 10-1002, 2012 WL 2152819, at *1-2 (Ariz. Ct. App. June 14, 2012).

### b. Conviction and Sentencing of Petitioner

On September 7, 2010, Petitioner was convicted by a jury of second-degree murder. (Doc. 8-1, Ex. B, at 173.) On November 23, 2010, the court sentenced Petitioner to 22 years imprisonment. (Doc. 8-2, Ex. D, at 22.)

### c. Petitioner's Direct Appeal

On June 2, 2011, Petitioner's counsel filed a timely opening brief in the Arizona Court of Appeals. (Doc. 8-2, Ex. H, at 48.) Petitioner alleged that "the trial court abused its discretion and deprived him of his due process right to present a complete defense by precluding evidence of the victim's motive to commit suicide: that she did not want to return to prison." *Sanchez*, 2012 WL 2152819, at *2. On June 14, 2012, the Arizona Court of Appeals affirmed Petitioner's conviction and sentence. *Id.* at *4.

On July 10, 2012, Petitioner filed a Petition for Review with the Arizona Supreme Court. (Doc. 8-3, Ex. Q at 75.) On December 5, 2012, the Arizona Supreme Court denied review. (Doc. 8-3, Ex. S, at 93.)

### d. Petitioner's First Post-Conviction Relief Proceeding

On February 5, 2013, Petitioner's counsel filed a notice of appearance in the case (Doc. 8-3, Ex. T, at 95), but the notice contained no reference to post-conviction relief (*id.*). On February 7, 2013 and April 24, 2013, counsel submitted requests for 60-day extensions to file the PCR petition (Doc. 8-3, Exs. V, X , at 104, 108), which were both granted (Doc. 8-3, Exs. W, Y at 106, 111).   On July 2, 2013, counsel filed for a third, 60-

- 3 -

day extension (Doc. 8-3, Ex. Z, at 113), but the court did not rule on this motion (Doc. 8-3, Ex. U, at 98). On September 3, 2013, counsel filed a PCR petition, which asserted three claims of ineffective assistance of counsel. (Doc. 8-3, Ex. AA, at 116.) On July 3, 2014, the trial court filed its order dismissing the PCR petition on the merits, without addressing the issue of timeliness. (Doc. 8-3, Ex. DD, at 156.)

### e.  Petitioner's Second Post-Conviction Relief Proceeding

On May 11, 2015, Petitioner filed a *pro se* notice alleging ineffective assistance of post-conviction counsel.  (Doc. 8-3, Ex. EE, at 160.) On August 5, 2015, the trial court dismissed the petition because the notice "does not state any claims for which Rule 32 can provide relief." (Doc. 8-3, Ex. FF, at 174.)

### f.  Petitioner's Federal Habeas Petition

On July 1, 2015, Petitioner filed this habeas Petition. (Doc. 1.) On September 9, 2015, Respondents filed a Limited Answer to the Petition.  (Doc. 8.)   On October 8, 2015, Petitioner filed a Reply. (Doc. 9.) Petitioner raises the following grounds for relief:

> 1. Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court barred admission of evidence of the victim's motive for committing suicide and when it denied Sanchez's motion for a new trial;
>
> 2. Petitioner's Sixth and Fourteenth Amendment rights were violated when he was denied effective assistance of post-conviction relief counsel.

(Doc. 1.)

## III.   THE PETITION IS TIMELY.

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a).  Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2244.

### a.  Time Calculation

The AEDPA imposes a one-year limitation period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Here, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on June 14, 2012. *Sanchez*, 2012 WL 2152819, at *2. On December 5, 2012, the Arizona Supreme Court denied review. (Doc. 8-3, Ex. S, at 93.) Petitioner's conviction became final 90 days later, upon the expiration of the time for Petitioner to file a petition for writ of certiorari in the United States Supreme Court. *See Porter v. Ollison*, 620 F.3d 952, 958–59 (9th Cir. 2010) (stating that "[w]hen, on direct appeal, review is sought in the state's highest court but no petition for certiorari to the United States Supreme Court is filed, direct review is considered to be final when the certiorari petition would have been due, which is 90 days after the decision of the state's highest court.").

Therefore, the one-year limitations period commenced on March 6, 2013. *See Patterson v. Stewart*, 251 F.3d 1243, 1245–47 (9th Cir. 2001) (the AEDPA limitations period begins to run on the day after the triggering event pursuant to Fed.R.Civ.P. 6(a)).

### b. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed. *See Isley v. Arizona Dep't of Corr.*, 383 F.3d 1054, 1056 (9th Cir. 2004). *See also* Ariz. R. Crim. P. 32.4(a) ("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred.").

### i. Notice of Appearance in First PCR Proceeding

A notice of appearance of counsel is insufficient to begin PCR proceedings. *See Isley*, 383 F.3d at 1005 ("Under federal law, the filing of [a request for appointment of counsel] does not toll the statute of limitations, because such a request is not a petition for relief from a judgment of conviction."). Here, Petitioner's notice of appearance of counsel did not reference post-conviction relief in any form, and thus did not provide any

notice to the court or the state. (Doc. 8-3, Ex. T, at 95.) The notice of appearance did not commence PCR proceedings. As noted below, the notice of appearance in this case has less significance because the trial court granted a motion to extend the filing of the PCR petition before the one-year limitations period began on March 6, 2013. (*See* Footnote 3.)

### ii. Orders Granting Extension to File First PCR Petition

Petitioner's first "Request for Extension to File Rule 32 Post Conviction Relief Petition" did provide notice of Petitioner's intent to seek PCR relief. When the trial court filed its order on March 4, 2013,[3] it referenced Ariz. R. Crim. P. 32.4, set a briefing schedule for the parties, and permitted Petitioner additional time to file the PCR petition.[4] In fact, the State believed Petitioner had filed a proper notice and told the court in its PCR Response that "Sanchez filed a timely notice of Post-Conviction Relief." (Doc. 8-3, Ex. BB, at 142.) If Petitioner had filed the PCR petition within the court's deadline, the State would have had significant difficulty claiming the PCR petition was untimely. Similarly, when the court granted an additional 60-day extension, the court would have certainly deemed a PCR petition filed before the second deadline as a timely filing. Respondent commendably agrees that the time from the actual filing of the PCR petition to its dismissal is statutorily tolled because "[i]n effect, then, the trial court determined that the petition was filed in conformity with pertinent statutory provisions." (Doc. 8 at 12.) This Court concludes that same logic applies to the court's orders granting additional time to file the PCR petition itself.

This Court can also look to the record as a whole to discern how the trial court would have ruled regarding timeliness. If a state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication whether it has deemed the application timely or untimely, the federal

---

[3] The order is dated February 25, 2013, but the order was filed on March 4, 2013. (Doc. 8-3, Ex. W, at 106.)

[4] Petitioner's direct appeal was not final until March 5, 2013. The trial court granted the first 60-day PCR extension on March 4, 2013. The time between the filing of the notice of appearance of counsel (February 5, 2013) and the court granting the first 60-day extension was already excluded from the one-year habeas filing deadline.

- 6 -

habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006). Here, the trial court would have undoubtedly found a PCR filing within the court's deadline to be timely. The court's order dated May 2, 2013 gave Petitioner 60 additional days to file a PCR petition. Petitioner's AEDPA clock was tolled until July 2, 2013.

### iii. Petitioner's Third Motion for Extension of First PCR

The trial court did not rule on Petitioner's third motion for an extension to file a PCR petition, which was filed on July 2, 2013. (Doc. 8-3, Ex. Z, at 113.) Respondents correctly assert this typically results in a denial of the motion. *See State v. Hill*, 848 P.2d 1375, 1385 (Ariz. 1993) ("A motion that is not ruled on is deemed denied by operation of law."). Even if the motion was denied, this did not prevent the court from ruling on the motion. *See State v. Padilla*, 859 P.2d 191, 193 (Ariz. Ct. App. 1993) ("Failure to file a timely motion for rehearing or petition for review is not jurisdictional."). The question before this Court is whether those 60 days are tolled here.

The Court finds the 60 days between July 2, 2013 and September 3, 2013 should be tolled. The Court will "examine the delay in each case and determine what the state courts would have held in respect to timeliness." *Evans*, 546 U.S. at 198. Here, counsel filed a request for a final 60-day extension, and filed the PCR petition within the requested deadline. The length of the requested extension was reasonable. Counsel requested the extension due to difficulties communicating with Petitioner, counsel's trial schedule, and health issues. (Doc. 8-3, Ex. Z, at 113.) The State did not object to the request for the extension. Although the trial court did not discuss timeliness in its PCR Order, it had the ability to deny the petition as untimely. The delay did not prejudice the State because the arguments in the PCR petition were predicated upon the trial record. The Court finds the trial court would have held the PCR petition to be timely.

Petitioner's PCR was pending until it was dismissed by the filing of the trial

court's order on July 3, 2014.[5] (Doc. 8-3, Ex. DD, at 156.) A PCR matter is "pending" until it "has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). Because nothing was pending after the trial court's decision, the statute of limitations began running the next day—on July 4, 2014. *See Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th Cir. 2007) (statute of limitations was tolled until date on which notice of post-conviction relief was dismissed where no petition for review was filed).

### iv. Petitioner's Second PCR Proceeding

The statute of limitations was not tolled by Petitioner's second PCR proceeding. This filing was not a "properly filed" state action for post-conviction relief because it was untimely. *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("[W]e hold that time limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's PCR petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."). Once the AEDPA limitations period expires, a subsequently filed state post-conviction proceeding cannot restart the statute of limitations. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

Petitioner mailed this Petition on July 1, 2015. Under the "prison mailbox rule" a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court. *Houston v. Lack*, 487 U.S. 266, 268 (1988).

---

[5] The trial court order is dated June 30, 2014. The order was filed July 3, 2014. The Court finds that the <u>filing</u> date is the appropriate date to begin the one-year limitations period because that is the first date Petitioner had notice his PCR petition was dismissed. *See Calhoun v. United States,* 647 F.2d 6 (9th Cir. 1981) (finding the "date of 'entry' is the critical event from which to measure the timeliness of an appeal" regarding Fed.R.App.P. 4(a)); *West v. Schriro*, No. CV-07-0009-PHX-FJM, 2007 WL 4510711, at *3 (D. Ariz. Dec. 17, 2007) (finding filing date, not order date, of trial court's PCR order began the one-year limitations period). In comparison, when a defendant is given personal notice of deadlines at sentencing, the date of sentencing controls. *See State v. Whitman*, 234 Ariz. 565, 568, 324 P.3d 851, 854 (2014) ("We hold that the twenty-day time limit for filing a notice of appeal begins to run on the date of oral pronouncement of sentence.").

- 8 -

The filing was timely.

## IV. DISCUSSION

### a. Ground One

Petitioner asserts the same claim he raised in the state courts, which was summarized as follows: "the trial court deprived him of his due process right to present a complete defense by erroneously precluding evidence that the victim had told Sanchez that she did not want to return to prison, which supplied a motive for her to commit suicide." *Sanchez*, 2012 WL 2152819, at *1. Prior to trial, the State filed a motion in limine to preclude evidence of the victim's recent imprisonment on several bases, including Rule 403 of the Arizona Rules of Evidence. (*Id.*)  The trial court granted the motion, ruling that "[t]he nature of the evidence, to me, is, under 403, substantially outweighed by the prejudice involved." (*Id.*)  Petitioner was permitted to present evidence the victim committed suicide and that she may have killed herself to avoid being arrested for assault. (*Id.*) The Arizona Court of Appeals concluded the "trial court did not abuse its discretion in determining that while the assertion that the victim was suicidal would be admitted, the victim's asserted intention not to go back to prison was unduly prejudicial and would not be admitted." (*Id.*)

Petitioner's claim that the preclusion of the evidence violated "Article II, Sections 4 and 24 of the Constitution of Arizona" (Doc. 1 at 6) is not cognizable on habeas review. Petitioner is attacking the state court's interpretation and application of its own rules of evidence, but it is not the policy of the federal courts to re-examine state court determinations of state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). *See also, Johnson v. Arizona*, No. CV-10-2096-PHX-GMS, 2012 WL 2390013, at *5 (D. Ariz. June 25, 2012) ("Petitioner himself, however, describes the claim as comprising 'repeated violations of Rule 403 of Arizona Rules of Evidence.' The claim is not cognizable on habeas review.").

Petitioner's sole federal claim is that the ruling violated his "right to present a

- 9 -

1 complete defense as guaranteed by the Sixth and Fourteenth Amendments." (Doc. 1 at 6.)
2 Petitioner cites to the Fourteenth Amendment, but Petitioner may not "transform a state-
3 law issue into a federal one merely by asserting a violation of due process." *Langford v.*
4 *Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). *See also Bradshaw v. Richey*, 546 U.S. 74, 76
5 (2005) (the Supreme Court has "repeatedly held that a state court's interpretation of state
6 law, including one announced on direct appeal of the challenged conviction, binds a
7 federal court sitting in habeas corpus.").

8 Assuming arguendo that Petitioner raised a cognizable claim, Petitioner's claim
9 fails. Petitioner must establish that the exclusion of the hearsay statement violated the
10 federal Constitution. *Estelle*, 502 U.S. at 72 (1991) ("our habeas powers [do not] allow us
11 to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the
12 California Evidence Code . . . The only question for us is whether the ailing instruction
13 by itself so infected the entire trial that the resulting conviction violates due process")
14 (internal quotation marks omitted). The exclusion of evidence violates the Constitution
15 only if "the evidence is sufficiently reliable and crucial to the defense." *Trillo v. Biter*,
16 769 F.3d 995, 1003 (9th Cir. 2014) (citation omitted) (finding preclusion of hearsay
17 statement of witness that corroborated theory of defense did not violate petitioner's right
18 to present a meaningful defense because there "was no evidentiary corroboration at all for
19 the witness statement in Trillo's trial.").

20 Here, the Arizona Court of Appeals correctly found "the physical evidence did not
21 support defendant's theory that the victim intended to commit suicide at all." *Sanchez*,

2012 WL 2152819, at *4.[6] Because Petitioner's claim is not corroborated, and instead is belied by the evidence and his admission to the 911 dispatcher that he killed the victim, the exclusion of this evidence did not violate the Constitution. *See also, Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion); *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (the Constitution permits exclusion of evidence that poses an undue risk of harassment, prejudice or confusion of the issues).

### b. Ground Two

Petitioner asserts his right to effective PCR counsel was violated when PCR counsel did not timely advise him of the trial court's denial of his PCR petition. (Doc. 1 at 9.) Petitioner alleges this led "to the forfeiture of his Constitution[al] right of direct review, inter alia, of his IAC claims presented in Petitioner's first PCR petition." (Doc. 1 at 9.) The Supreme Court has held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).

More importantly, Ground Two does not present the merits of any claim for the Court to consider. The Court has evaluated the merits of Ground One. Petitioner's claim

---

[6] The Arizona Court of Appeals found:

> The evidence that Sanchez had slashed the victim's throat was overwhelming: the medical examiner concluded that it was not likely she slashed her own throat because of the absence of any hesitation marks; the blood spatter patterns showed that she had tried to escape the apartment after her throat was slashed and was prevented from doing so by Sanchez; on one of the calls made by the 9–1–1 dispatcher, a female can be heard screaming; and two minutes after telling the 9–1–1 operator that nothing was wrong, Sanchez told a relative to come and pick up the child and take care of him for life because he had "fucked up" with his girlfriend, for which he was sorry. He also told a police detective the day after the murder that he thought he had told the 9–1–1 dispatcher that he had killed his girlfriend.

*Sanchez*, 2012 WL 2152819, at *4.

- 11 -

in Ground Two is not cognizable. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Dubrin v. People of California*, 720 F.3d 1095, 1097 (9th Cir. 2013) ("Section 2254 excludes from this broad grant of jurisdiction only one category of claims—those for ineffective assistance of postconviction counsel. § 2254(i)."). Petitioner's claim is not cognizable.

## V. EVIDENTIARY HEARING

An evidentiary hearing is not warranted regarding Petitioner's claims, including equitable tolling, because the record is sufficiently developed to resolve this question. A habeas petitioner asserting equitable tolling "should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003)). Petitioner has not asserted grounds for equitable tolling, and an evidentiary hearing is not mandatory.

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are timely, but are not cognizable, and Ground One lacks merit. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial

1 of a constitutional right.

2      This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

     Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

     Dated this 10th day of March, 2016.

                              Honorable John Z. Boyle
                              United States Magistrate Judge